United States v. Dent, and we'll begin with Mr. Scott. Thank you, Your Honor. May it please the Court. Excuse me. My name is Mike Scott, and I represent Maurice Dent in this appeal. There are two issues before the Court, the first being violation of speedy trial rights and the second being a sentencing issue. Within the speedy trial right argument, there are three different arguments. The first being whether or not the government should have been granted continuance based on what they claimed was an essential witness and whether they practiced due diligence in obtaining that witness. The second issue is whether or not that witness was actually an essential witness. The third issue is, even if the Court doesn't look at those first two, is whether or not Mr. Dent's speedy trial rights were still violated once the witness returned from what was alleged to have been active duty and the Court was informed of that return. Mr. Dent was charged... So your argument is that even if we agreed with the government up until Mr. Kraft came back, since he came back on November 1, that should end the matter? Is that the bottom line of this third point? Essentially, Your Honor, what the Court ruled, and what its ruling was at that time, was that when Officer Kraft returned, the U.S. Attorney's Office was to promptly inform him of that return and so that the case could be scheduled. So what happened, though, was an email was sent on November 1 saying the person that caused this continuance has returned. Instead of setting it and bringing it to court like Judge Wingate said it should happen, the district judge entered again the order that he previously entered on August 2, saying that he was an essential witness, that he couldn't be there, and put it to an uncertain date, but no later than January 2020. And so our third argument, yes, is that that time should count. And from the time until he returned... And you prevail under that, or your client prevails under that, even if we rejected the other two points, is your argument, right? Correct, Your Honor. Okay. And to go back to... And do you know why it happened the way it did, that Kraft came back but the continuance was still granted? Denied, Your Honor. The email was sent to Chambers, it was sent to myself, it was sent to other people within the U.S. Attorney's Office, supervisors within the U.S. Attorney's Office. And then some four days later, for whatever reason, the order was re-entered again. And so we had no explanation, we had no hearing. And the district judge was clear at the hearings on August 21 and 23 that when Officer Kraft returned, that he was to be brought to the court so that the court could set a trial date. And the court did not do that. They still continued it for an indeterminate amount of time, no later than January 2020 trial time. Backing up... Sorry, Your Honor. Were you about... Okay. Backing up to whether or not the government practiced due diligence in even getting Officer Kraft. On July 31, the day before this case was set for trial, the government filed a motion for continuance, asking, asserting that, asserting that they had exercised due diligence and that this was an essential witness and they could not have him there. Before defense counsel had an opportunity to respond, district judge basically ruled that he was an essential witness and they had exercised due diligence. Defense counsel obviously filed a response, objecting to the order and objecting to the continuance. At the hearing on August 21, no evidence was presented. In this case, it resembles the Burrell case in that no evidence was presented that this person was one, that they exercised due diligence to get this person or that they could not come back. The district judge gave him another opportunity. On August 23, there was a hearing where Colonel Rodney Harris testified. He testified on a couple of points, a couple of points being that it would take 30 to 60 days for the officer to return. He testified that it would take 37 days in addition to that, not in addition to the 30 to 60 days, but he also testified that it would take 37 days to get somebody up so that they could have the officer return. Importantly, he also testified that he had never received a subpoena from the U.S. Attorney's Office. So, no efforts were shown that any efforts were made to get Officer Kraut there in a timely fashion to have this trial. Counsel, help me a little bit. Some preliminary things. They're really not preliminary, I guess. Through what lens do we evaluate this? I mean, are these, the evidence you're walking through right now, are we looking at that for clear error? Are they factual findings by the court? Is this an abuse of discretion? How do we get to fleshing out or defining what is an essential witness and what is due diligence here? Your Honor, under the standard, when the court looks at a violation of the Speedy Trial Act, findings of fact are looked at for clear error. The court's rulings are ruled on de novo. But what is this here that we're talking about? Are these findings of fact or is this a ruling that is more legal in nature? It's a little bit of both, quite honestly, Your Honor. So it's a mixed question. It is a mixed question. De novo all the way around? I think the court should look at it that way. But also the court can look at it clearer because the simple facts of what the government did or did not do is that on June 5th, before the trial set for August 1st, they found out, the Assistant U.S. Attorney found out he had been deployed. What was developed during the hearings was that he was deployed before this was ever even indicted. And so what was imputed, what should be imputed to the U.S. Attorney's Office is knowledge that he was not available. And yet they did nothing from the time of the indictment in January until June 5th. And then on June 5th, it's like, oh, we found out he was deployed. And really, there was no evidence presented that they did anything. And specifically, no evidence was presented that they attempted to subpoena him. And in fact, the Assistant U.S. Attorney, on the day, August 23rd, of the hearing, Colonel Rodney Harris admitted that he had not talked to that person before. That was his first time talking to him. So there was a showing that nothing had been done for the due diligence element to show that they had done anything to get this officer back. It's kind of like throw up your hands and say, well, he's deployed, we can't do anything. But that simply was not the case. There was a—it came out during the hearing that there was a procedure for them to do that. So you're saying there's no facts to find if there's no evidence. There's no evidence presented by the U.S. Attorney that they'd done any due diligence. And in fact— But I thought the facts were—other facts. He was in Kuwait, right? So he was deployed, and wasn't there evidence that it would be severe hardship to bring him back because of what he was doing logistics-wise and with regard to other deployed troops? Yeah, there was some evidence to that effect, but we don't look at what the hardship is. And in fact, and Burrell cites it in a note, Williams v. Obligus Taylor, that whether or not it's going to succeed is not what we look at. We look at what they did to get that person back. Because did they try enough? They didn't try. The evidence says they didn't try. Let me rephrase that. The lack of evidence shows they didn't try. Because all they did was— Putting the United States' efforts in Kuwait above the need to convict a one defendant on felon in possession or whatnot, is that, you know— I mean, is that something we can challenge? Oh, they should have brought him back even though they really needed him in Kuwait because, hey, this guy needs a trial. Your Honor, 18 U.S.C. 3161 of the Speed Trial Act, Congress decided that a defendant had a right to a trial of consent. No, I'm well aware of that. I'm not saying that Mr. Dent's trial is not important. What I'm saying is if the government perceives the importance of the work in Kuwait above that of pursuing a felon in possession criminal case, is that something that should be considered by the district court in determining the fact question of the due diligence? No, because the case law says that you have to do something. And so the fact that they didn't do anything shows that there was no due diligence practice at that point. But is it anything always pulling the person back or trying to, or is it thinking about the need for the person? Your Honor, and that kind of gets into the second point. What the government's motion to continue said, alleging that he was an essential witness, says that he's the one that can put the gun in Mr. Dent's hand. Well, yeah, that is a much better argument, right, that there were these other two officers that could testify. That's a better argument than we should be pulling people out of Kuwait. And at the time of the motion— Isn't it? At the time of the motion to dismiss, Your Honor, we didn't know that there were other officers. That's the problem. Oh, you didn't, but they did, the government did. Well, and Officer Grant wrote a report the same day, I think it was January 26, 2016, about his actions on that day. Because you have Officer Kraft, you have Officer Grant, and Officer Giddens, all involved in this chase. And so in February of 2020, after we'd argued, and we could only argue due diligence in August, because that's all we knew. In February, we learned that Giddens, based on a report of investigation by the ATF, had participated in this chase as well and had recollections from it. In September of 2020, we learned that Officer Grant had written a report on January 26, 2016, about his involvement. So the initial argument in August was simply about due diligence and the lack of due diligence by the government. The subsequent motions, though, were based on later given discovery, saying, no, not only did you not practice due diligence, he's also not an essential witness, because there are other people that put him in place. Now, the government— Do you think you can prevail on any one of those three? I think we should, Your Honor. The November 1 argument, the due diligence argument, and the not essential argument. Any one of those, if we agree with you, you think that ends the matter? Yes, Your Honor. And the effect of that, obviously, is to reverse the sentence and end the matter, end the case, right? Correct, Your Honor. How do we determine what is non-essential and what is essential? What's our standard there? Your Honor, in . . . I mean, does it come from the Ortiz case or is it somewhere . . . Tell me how we determine or how we review the district court's determination that this witness was essential. Your Honor, Ortiz gives us a standard. It says that a witness is essential if their testimony is non-cumulative. What is cumulative then? Well, it's the same thing over and over again, which is whether Mr. Dent ran, whether Mr. Dent . . . And honestly . . . What if it differs at the margin, so to speak? In other words, Kraft was the one that initiated the stop and that saw the thing from start to finish, correct? One of the officers didn't really have recollection. They might have had a report. The other officer had some recollection. What if they generally tell the same story, but, I mean, is that cumulative? Or who gets to make that call? It is cumulative, Your Honor. And one of the things that you brought up was about whether or not . . . whether one remembers something and one doesn't. A different assistant U.S. attorney made a recommendation or a representation to the court that Officer Grant had no recollection, independent recollection of any of the actions that occurred. He wrote a report. He basically said, I wrote my report. I'm sure it's accurate. I don't remember it. But then gets up on the stand and testifies in great detail about what happened. And I'm almost out of time, and I believe Officer Grant was the one that joined the chase shortly after. There are certainly ways, and anticipating what the government is going to argue, there are certainly ways that they can bring in the testimony about the chase other than with Officer Kraft's testimony. Did he contest the validity of the initial pullover? He did not, Your Honor. Okay. So that's relevant. He did not. And nowhere in the record do you see any motion to suppress that stop because of trial strategy and things of that nature. Do you want to talk about sentencing? You only have like 80 . . . no, yeah, 80 seconds. Your Honor, our argument in sentencing simply has to do with the court's failure to properly calculate the guideline sentence. We had four protracted hearings regarding specifically a four-level enhancement for another . . . using another felony offense. And in fact, the person that would have been the witness to what was alleged to have been another felony offense, he ultimately did not testify he was charged with other crimes. I understand that the judge granted afterwards our request for that four levels not be implied, but the whole situation was because of this protracted argument over these various aspects that he did not properly calculate the guidelines and these guidelines were not accurate when he gave a sentence of 120 months. Thank you. You've reserved some time for rebuttal. Okay. Mr. Kennedy? May it please the Court. I'm Greg Kennedy representing the United States. With me today is one of my associates, AUSA Gaines Cleveland. One of the first issues that the court just left with, I want to disabuse the court of the notion that there were three witnesses and talk about the essential character of why Officer Craft is essential. First and foremost, they were really smart in talking about their trial strategy and that they had not filed a motion to suppress. I would dare say that the record shows that once Officer Craft was back, they realized that a motion to suppress would not work. But it is still important since Officer Craft was the sole individual who could testify and establish the constitutionality, i.e., the probable cause for the stop to begin with. It was Officer Craft. But they didn't contest that. They did not contest that. But we are in a situation, unlike Ortiz, which I want to draw a distinction, Ortiz does not apply in this case. Ortiz was based on grand jury testimony where the procedures, including the rules of evidence, are different from what is required at trial, so is the burden of proof. There it's only having to show probable cause to believe. Hearsay testimony is applicable. And Ortiz, if read a little bit clearer, will see that he was deemed to be a nonessential witness because another witness could testify by hearsay as to what that witness would have testified to in order to secure a grand jury indictment. But as this court is well aware of, that same kind of testimony couldn't take place at trial. But here you didn't have hearsay testimony. You had witnesses who could come in and say, I saw him throw something in the bushes. To the extent, again, if we first want to set aside the issue of their right, whether they exercised it or not, their right to have contested the constitutionality of the stop and separate that and then get to the actual facts. Again, there weren't even three witnesses. The government is— But Ortiz says, I'm sorry to interrupt you, but I am grappling with what is our standard here. How do you define all these things? Yes, Your Honor. Ortiz adopts language from other circuits that basically says the witness should be deemed nonessential if the witness's anticipated testimony would be merely cumulative or substantively irrelevant. But then it also says that the witness would— trial without the witness would either be impossible or would likely result in the miscarriage of justice. Couldn't you have tried this case without Kraft if you had the other two officers in the reports? Well, we factually did not have two other officers. This Officer Giddens that was referred to, the defense had already indicated there was a publication about Officer Giddens' wife in trying to sell a puppy. This puppy had a published photograph with bleeding ears where the ears were clipped. As a result of that, the defense indicated that they were going to use that to somehow at the time impeach Officer Giddens. So the government had to make the decision on whether they wanted to use Officer Giddens, and they filed a motion in limine to try to preclude that testimony. So in order to clear that up, now we're only left with Officer Grant and Officer Kraft to testify about who actually possessed the weapon. So what about the November 1? I'm sorry? What about the November 1 argument? To me, I just don't understand why the minute Kraft was back, there wasn't a trial. Don't know either. All we know from the record is that at the end of the hearing, on the record, Judge Wingate had told the government to prepare an order consistent with its ruling, finding that, based on Officer Harris' testimony, that this witness was in fact one, unavailable, and was two, essential, and that the government had exercised due diligence in granting it. There's nothing in the record to indicate if and when, and I don't know, I was not the trial attorney, when that order, if it was done, presented to Judge Wingate for his signature. But I thought he signed an order on November 5th, and you all sent an email on November 1. And that's all I'm trying to point out, is what happened during that period from the time the hearing was over, the email to the court, there's nothing to indicate in the record, you know, what was submitted to the court, or the timing, or whether the court itself was aware of that email. It is, in fact, and I don't dispute the fact that it was emailed to the chambers, defense counsel, and other government attorneys, but there's nothing there. Okay, so whether the judge was careful in making sure that the witness was still gone, how is it not an error to have granted the continuance once the witness is back? Well, even when the witness is back, I think the court is aware that the district court has control of its docket in order of setting that. Now, what went into his consideration? But not on the 70 days. So, I mean, once Kraft is back, don't the 70 days start to tick again? If Kraft is back, it would. And so, if the judge is just not paying attention to emails to chambers and whatever, and I'm not being disrespectful, but if that's your best argument, is the judge just isn't paying attention, how does that change the 70 days passed by the time the case was tried? Even assuming arguendo, we needed Kraft because Kraft was back. As based on the calculations, we are still within that window at the time the court entered that order, continuing it to the January term, within that four-day period. Okay, but that isn't enough. I mean, you've still got to give the person, this person still gets a trial within 70 days. When you sign the order, it's when the trial is held, right? That's right. Absent something, you know, one of the other exceptions occurring. So, what's your best argument on the November 1? I want to make sure I do understand the question here because if the email went there, you're asking whether the 70 days had already expired at that time? No. Okay. I'm saying that once the email gets sent, more importantly, once Kraft is back and the court is notified of that, let's just say that, 70 days is now running. Yes, Your Honor. Okay. How do you explain then that he still got a timely trial? Other than the court looking at the docket itself, and this order, again, is relating back to specifically the August 23 hearing. If you look at ROA Record on Appeal 68, that is the order that the district court entered, and in it, at the very beginning, it refers back to the hearing held on August 23rd, and that was the date Colonel Harris came in and testified. And again, I have nothing in the record to indicate why there was any kind of delay in the entry of that order. But maybe I'm just misunderstanding the dialogue here, but the order's entered November 5, right, saying, well, we're going to set this in January 2020. That is correct. Kraft is back by November 1st. That is correct. All right. Well, so we're sitting in February of 2020, and we haven't had a trial yet. I mean, I wasn't the best at math, but that strikes me as well over 70 days having elapsed. Isn't that a violation? If it were, if it did elapse more than 70 days, but if the court will look to our brief at page 12 where there's a table and a calculation of the time based upon the orders issued by the district court, by the time of February 10th, 2020, by the government's calculation, only approximately 40 days had elapsed based on the speedy trial clock. And it was after that 2020 is when defense counsel filed a motion to dismiss based on a speedy trial clock. But that's because you're not counting the time based on the judge's order. That's right. You're not counting the time between November 1 and January 31. What case supports that notion that if the judge is just granting continuances right and left based on nothing, that that doesn't count towards the 70 days? Right. I would not have a case on that. I believe that the court had decided that it had the opportunity based on his unavailability, and that's why he entered the order the way he did. And again, I just don't know. What case says that that's OK, that that gets you the extra time? To say if the court were in fact aware that he was back. Yeah. Right. And I don't know that he knew that, and I don't have a case that speaks specifically to that point. OK. So if you counted November 1, 2019, to February 10, 2020, that would be more than 10 days, right? Right. That's right. OK. I thought maybe I've forgotten some math here, but I think that's more than 10 days, which is your form here on page 12 of your brief. I mean, I understand you're doing the best you can under your set of facts. We have to rule correctly. We don't just have to make an argument. So I'm trying to understand how we get there. And if the theory is that a judge not taking account of what's coming into his or her chambers, that that is a basis to avoid the 70-day rule, is that your best argument? I don't have any case on point like that, Your Honor. OK. Beyond that, if we are then within the 70-day rule, again, getting back to the essential character, I think it is very clear from the court's findings, and again, as Judge Wilson recognized, it is clear error for these factual findings, and that unlike the case in Burrell, which decided it wasn't, that the court or that the government had not exercised due diligence, in this particular case, the government did, in fact, bring live testimony through the testimony of Colonel Rodney Harris, who's the S-1, which is the personnel in charge of the State of Mississippi National Guard deployments, and also entered a copy of his orders showing that he was deployed. So unlike those cases, they did, in fact, show that he was deployed. He did testify that he was deemed essential to his mission in Iraq, because it wasn't just Iraq. There were other areas, both classified and unclassified, in which those troops were working at that point in time, and would have caused an undue hardship on the military to have him brought back at that time. Now, in fairness, one of the pleadings filed by the government found that Record on Appeal 100, there's a footnote there, and it references that a subpoena was emailed to Clark, and that after that, they also tried to contact the International Affairs Office to explore other ways to try to get him back, and that they would be made available upon request. Now, none of that is in the record. I just point to you that footnote is what was stated by the trial counsel. But as Rodney Harris, or Colonel Harris, testified to, even if they had made the process of trying to issue a subpoena, in his 31 years of service, he had not seen anybody from the Mississippi National Guard released from their duties in a similarly situated position to come back and testify for trial. So it's more akin to Patterson, as was discussed in Burrell, where the U.S. Marshals were even having to consider driving or flying a witness for trial. In this case, we have a military personnel on orders that would have to be redeployed, have to go through a demobilization process, and also in context, even at that time, they had thought that he would be back within a couple of weeks, but clearly the facts were there to support Judge Wingate under the clearly erroneous standard that he was an essential witness. Looking at sentencing, I think it's very important to point out a couple of things. First of all, there was a pre-sentence report that the district court had prior to sentencing that included those four levels to which the defense objected to. Over the course of four separate sentencing hearings, that four-level enhancement depended upon a witness to testify about it, and Judge Wingate was clear that he wanted to hear from that witness if the government intended to rely on that. An opportunity was made for that witness to be presented, however, that witness ultimately decided to plead the fifth. As a result, during the sentencing hearing, the last one that was had, the government asked the court for a sentence to the statutory maximum of 120. Probation recommended 120. And further, during the course of discussion, before Judge Wingate passed sentence, the government conceded that the four levels might not apply in this situation, and as a result, it resulted in a new guideline calculation, which was less than what was in the pre-sentence report. So the point of that is very clear that Judge Wingate, prior to pronouncing sentence, had both the pre-sentence report, considering the four-level enhancement as outlined in the pre-sentence report and as presented by probation, but he also had a properly calculated guideline based upon the government's recommendation that the four levels would not apply. And there was no objection by defense counsel to that new calculation by the government. And it was only then that the district court said that based upon the considering of the advisory guidelines and the 3553 factors that he decided to sentence under 120 months. So you're saying that the . . . Reading the record, which I have, it shows that he did not include the four-level enhancement. Right, and more importantly, that he did, in fact, as an initial step, have properly calculated guidelines in front of him. Now, ultimately, he granted the motion or the objection to those four levels and made it clear, but at the same time, the court had both of those properly calculated guidelines. You're saying he'd already thought about it, but at the end of the day, he wanted to give the maximum. And he was specific about that, because as this court requires, he must add more specificity to any sentence that goes outside of the guidelines. And he said that this is a sentence that he felt was just under the circumstances. Now, the record is very clear about that, too, because in the prior sentencing hearings, you can see where he has probation go over various tattoos and photographs, social media posts that might potentially tie him to a violent gang, which, as we've seen in our previous orders, Judge Wingate likes to make sure that that's not taking place. So as to the sentence, it was within the statute. It is valid, and it was based on a properly calculated guideline range, and all the factors were considered. Okay. Any more questions? If there are any further questions, the government rests on the brief. Okay. Thank you for your argument. We'll now hear rebuttal from Mr. Scott. Thank you, Your Honor. Before I start, though, based on Judge Wilson's question, I want to make sure that I told the court properly. I think Counsel Opposite did as well. What Ortiz says is that we view the district court's factual findings supporting its Speedy Trial Act ruling for clear error and its legal conclusions de novo. Returning to one of the last arguments Counsel Opposite made about Patterson, the government recognizes in their brief, and what distinguishes Patterson from this case is in Patterson, there was a properly executed subpoena for that witness, and there was trial testimony from a marshal about the problems in getting that witness back. There was never, in the evidence that has been presented to Judge Wingate or to this court, any properly issued subpoena to support the Patterson factors that could be found.  The November 5th order is on Record on Appeal 68-69, and then the August 2nd order is Record on Appeal 59-60. If you look at those orders, they are almost factually similar, the difference being that on November 5th, the judge says, now, we've heard testimony from Colonel Harris, and then goes on and says that Officer Kraft is an essential witness that is not currently in the country. That wasn't true. In fact, even Colonel Harris' testimony during the August 23rd hearing testified that he was to return around September 6th to Fort Hood. He was to go through some, I guess, release-type process, and he would be back in Mississippi on September 16th. Judge Wingate's ruling at that time was for the government to continue to diligently try and get him back and to inform the court as soon as he was back. Now, we don't see that informing the court until November 1st, and it was sent to Judge Wingate's chambers. And so I think the assumption can be made that the court got that email. What about this argument that if the court wasn't paying attention to emails to the chambers, that that somehow supports the notion that November 1st to February 10th doesn't count? Yeah, there's no case law on that, and I don't think that the court has staff for a reason. At the time, Judge Wingate had multiple law clerks, so I don't think that that's supported by what's happened here in this case. Certainly there was no reason for an email to go out on November 1st and then an order on November 5th, some four days later, be entered saying, well, with her testimony just now, this person's still out of the country. And so I don't think that that's supported by the facts in this case or any case law to support that that somehow weighs. It's approximately 101 days, if my recollection is correct. That's in addition to the 30 days, 30-some-odd days, that were from his original arraignment to when trial counsel first asked for a continuance. And so I don't think that that weighs that 101 days. Finally, as to the Giddens motion in limine that the government started out with, yes, a motion in limine was filed. Never argued. So there was never a ruling on that motion in limine. There was never anything that prohibited Giddens from testifying. So you do have three witnesses, Kraft, who the government didn't exercise due diligence on, and Ann, who was not a central witness, Grant, and Giddens, that all could have testified to all the same facts, that all three of them could have established the elements to convict Mr. Dent. Instead, the government, instead of trying to get their witnesses in order, and quite also providing discovery in a timely manner, waited almost a year past when Officer Kraft returned to trial this case. And almost a year, over a year, from when they filed their first motion to continue. And so under all three scenarios, whether it's due diligence, essential, or the 101 days from November 1st, we'd ask this court to dismiss this conviction. Thank you, Your Honor. Okay, thank you. Thank you, both sides. We appreciate your arguments. The case is under submission. And we are going to take a break at this time.